NOT FOR PUBLICATION



FILED

FEB 11 2008

HAROLD S. MARENUS, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:                                                   STEVE BELL,                     Debtor. STEVE BELL,                     Appellant, v. CLINICAL LABORATORIES OF HAWAII, LLP,                     Appellee. | BAP No.   NC-07-1324-JuMkK Bk. No.    05-34212 M E M O R A N D U M[1] |

Argued and Submitted on January 24, 2008
at San Francisco, California

Filed - February 11, 2008

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Thomas E. Carlson, Bankruptcy Judge, Presiding

_____

Before:   JURY, MARKELL and KLEIN, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1) it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Case: 05-34212    Doc# 76    Filed: 02/11/08    Entered: 02/21/08 09:36:16    Page 1 of 11

# I. INTRODUCTION

Chapter 13[2] debtor filed a § 362(h) motion seeking damages from Clinical Laboratories of Hawaii, LLP ("CLH") for its stay violations. The bankruptcy court denied debtor's request for damages, including his attorney's fees. Debtor timely appealed only the denial of his attorney's fees.

For the reasons set forth below, we vacate the portion of the order denying debtor his attorney's fees and remand for a determination of the amount of debtor's actual damages under § 362(h).

# II. FACTS

On October 12, 2005, debtor filed a voluntary chapter 13 bankruptcy petition. Debtor listed CLH as an unsecured creditor in his schedules. CLH received notice of debtor's bankruptcy case, but continued to send debtor collection notices (the "notices") for prepetition debt after his filing. Debtor received over seventeen notices from CLH starting on January 10, 2006 and continuing to March 12, 2007.[3]

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, as enacted and promulgated prior to the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23, because the case from which this appeal arises was filed before its effective date (generally October 17, 2005).

[3] CLH turned the account over to a collection agency, NCO Financial Systems, Inc. ("NCO"), which also sent debtor a collection notice dated March 12, 2007. NCO subsequently phoned the debtor in an effort to collect the debt. NCO also reported negative information about the CLH account to the major credit reporting agencies. Debtor subsequently entered into a

(continued...)

Case: 05-34212   Doc# 76   Filed: 02/11/08   Entered: 02/21/08 09:36:16   Page 2 of 11

Debtor paid off his plan early and received his discharge on March 13, 2007. His case was closed on May 24, 2007.

A.  Debtor's Motion for Damages for Violation of Stay

On May 25, 2007, debtor filed a Motion for Damages for Violation of Stay (the "Motion") seeking damages from CLH for its stay violations.[4] Debtor sought $500 for each postpetition statement or collection notice sent by CLH, $2,000 for additional travel expenses and $4,200 for his attorney's fees.[5]

Concerning his additional travel expenses, debtor alleged that as a direct result of a low credit score and recent collection referral by CLH to credit reporting firms, he was unable to rent an apartment near San Jose which was close to his business activities. As a result of living further away, debtor maintained he incurred additional travel expenses driving to San Jose three times a week. He contends these expenses would not have occurred "but for" CLH's postpetition collection actions.

Debtor also requested an order requiring CLH to delete from his credit reports any negative information it gave to the reporting agencies after he filed his petition.

On July 3, 2007, after a duly-noticed hearing, the bankruptcy court found CLH had violated the stay and set a trial date regarding debtor's damages.

---

[3](...continued) confidential settlement with NCO which was not disclosed during the trial on damages.

[4] Because debtor filed his Motion one day after his case closed, he was forced to file a motion to reopen his case. The court granted debtor's motion to reopen on June 18, 2007.

[5] Debtor's attorney did not provide time records in support of her request.

-3-

B.  The Trial on Damages

Only the debtor testified at trial. He stated that he had discussions with his counsel in late 2005 or early 2006 regarding the notices from CLH and was told to "send the bills back, write on them and, you know, collect the invoices." Debtor claimed he returned some of the correspondence to CLH with a handwritten notation "Please don't send any more bills. This was part of my Chapter 13 bankruptcy case." Debtor testified that he included his bankruptcy case number, phone number and name on the bills he sent back to CLH and that he thought CLH would eventually stop sending him bills. Debtor also testified that he started throwing some of the bills away since they came so often.

Debtor stated that his credit rating prior to his filing was "very good" for close to thirty years, around the 800 level. When debtor last checked his credit rating it was 655 or 660.

Debtor also testified about his difficulties in renting an apartment close to his business activities. After being turned down numerous times, debtor eventually ended up in Berkeley with a friend who allowed him to stay in his living room for free while debtor trained him in the trading business. When the friend's roommate was transferred, debtor was able to assume the sublease after explaining his bankruptcy to the landlord. Debtor testified that later he was able to rent an apartment closer to work after showing the manager the Motion involved in this appeal to prove that the debt to CLH on his credit report was not legitimate.

At the trial, the court made findings pursuant to Rule 56(c). The trial judge found debtor's testimony regarding his

-4-

difficulties in renting an apartment "too general." The court noted that debtor was looking for a job and had filed bankruptcy; it was more likely that these factors contributed to his difficulties in renting an apartment. The court then expressed its views regarding the lack of evidence regarding debtor's damages that occurred as a result of his receiving the notices and implied that it would award no damages due to this lack of evidence.[6] The court took under submission the question of whether debtor should be awarded his attorney's fees.

On August 20, 2007, the court filed its findings of fact and conclusions of law denying debtor his attorney's fees as damages under § 362(h). Relying upon In re Risner, 317 B.R. 830 (Bankr. D. Idaho 2004), the court found the fees unreasonable:

> Given how long the stay violation had been occurring, the absence of any exigency or egregious conduct, and that debtor's counsel could not file the stay-violation motion without reopening the bankruptcy case, counsel should have sought an informal resolution before filing a formal motion. Specifically, counsel should have written a letter to the creditors, notifying them of their stay violation and providing the facts needed to link the debt with debtor's bankruptcy...The filing of the motion created debtor's only provable damage, and may never have been needed.

Debtor timely appeals from the order incorporating these findings and conclusions.

### III. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

---

[6] Debtor does not dispute those findings in this appeal.

Case: 05-34212    Doc# 76    Filed: 02/11/08    Entered: 02/21/08 09:36:16    Page 5 of 11

## IV. ISSUE

Whether the court abused its discretion by denying debtor's request for his attorney's fees, as actual damages, pursuant to § 362(h).

## V. STANDARDS OF REVIEW

We review the court's assessment of damages under § 362(h) for an abuse of discretion. Eskanos & Adler, P.C. v. Roman (In re Roman), 283 B.R. 1, 7 (9th Cir. BAP 2002). A bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990). Under the abuse of discretion standard, we must have a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached before reversal is proper. AT&T Universal Card Serv. v. Black (In re Black), 222 B.R. 896, 899 (9th Cir. BAP 1998)(citations and quotation marks omitted).

## VI. DISCUSSION

The record in this appeal demonstrates that CLH had violated the automatic stay on numerous occasions, even though it had been listed in debtor's schedules and had notice of debtor's bankruptcy. Besides sending the notices to debtor in an attempt to collect a prepetition debt, CLH turned over debtor's account to NCO who reported the account to the major credit reporting agencies postpetition with negative information. Accordingly, the court found CLH had willfully violated the automatic stay.

Once the court finds that a willful stay violation has occurred, damages, including attorneys' fees, are nominally

-6-

Case: 05-34212   Doc# 76   Filed: 02/11/08   Entered: 02/21/08 09:36:16   Page 6 of 11

mandatory under § 362(h). See 11 U.S.C. § 362(h);[7] Roman, 283 B.R. at 11 citing Stainton v. Lee (In re Stainton), 139 B.R. 232, 235 (9th Cir. BAP 1992)(noting that the "plain language of the statute requires that the injured party be awarded the entire amount of actual damages reasonably incurred _as a result of_ a violation of the stay.")(emphasis in original). The court may award attorneys' fees and costs as actual damages in the absence of other damages. Roman, 283 B.R. at 10 n. 10. We have noted, however, that more scrutiny is warranted where "the debtor's only injuries are those incurred in litigating the motion for sanctions, and where there exist no circumstances warranting punitive damages." Id.

Although the bankruptcy court found that debtor's Motion was likely unnecessary because he did not mitigate his damages by sending a letter to CLH prior to his Motion, filed May 25, 2007, this finding is undermined by the court's order entered August 21, 2007 that included (1) a provision ordering CLH to take all necessary action to correct the information regarding the prepetition debt that it or its agent, NCO, provided postpetition to credit agencies and (2) a second provision that left open the option for the court to enter a further order to determine whether CLH is liable for damages in the event it did not comply.

The record further shows that CLH did not immediately rectify the inaccuracies in debtor's credit reports once debtor filed his Motion on May 25, 2007. At the trial, the court noted

---

[7] Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 the subsection that addresses damages for a willful stay violation is now (k).

-7-

Case: 05-34212    Doc# 76    Filed: 02/11/08    Entered: 02/21/08 09:36:16    Page 7 of 11

that the failure to correct the credit reports was a "temporally-separate" violation that had to be taken care of. The court's order, entered on August 21, 2007, gave CLH until September 14, 2007 to correct the debtor's credit reports. On September 17, 2007, CLH filed a Statement of Compliance with the court, showing that it did not send letters to the credit reporting agencies to correct the negative information until September 10, 2007, twenty days after the court order and almost four months after debtor filed his Motion.

While the court found that the negative information on debtor's credit reports did not have the necessary causal nexus to his inability to rent an apartment close to his work, it was necessary for debtor to have his credit reports corrected to prevent any prospective harm. Apparently the only way to get CLH to correct his credit reports was to obtain a court order requiring CLH to do so. Debtor's Motion was therefore necessary; a simple letter to CLH would not have afforded him this relief, since CLH acted only after the court issued its order.

Accordingly, we find that debtor did incur attorney's fees as actual damages as a result of CLH's willful stay violations that included its agent, NCO, making negative postpetition reports regarding CLH's debt to the credit agencies. Those damages are directly related to his judicial remedy. See Roman, 283 B.R. at 7-8 (noting that "[a]n award of damages under § 362(h) requires a showing by the debtor that [he] sustained an injury from a 'willful' violation of the stay.")

We recognize the bankruptcy court noted that debtor's damages, if any, should be offset by his settlement with NCO, the

-8-

Case: 05-34212   Doc# 76   Filed: 02/11/08   Entered: 02/21/08 09:36:16   Page 8 of 11

amount of which was confidential and not disclosed during the trial on damages. However, the record demonstrates that debtor continued to incur attorney's fees after his settlement with NCO due to CLH's failure to correct his credit reports even though the court found CLH had willfully violated the stay in July 2007. Therefore, at minimum, debtor is entitled to his attorney's fees from the time of the settlement until the time CLH corrected debtor's credit reports.

In sum, we find on this record the bankruptcy court abused its discretion in finding that debtor did not suffer any actual damage due to CLH's willful violation of the stay.

## VII. CONCLUSION

For the reasons set forth above, we vacate the portion of the order denying debtor his attorney's fees and remand for a determination of the amount of debtor's actual damages under § 362(h).

Case: 05-34212    Doc# 76    Filed: 02/11/08    Entered: 02/21/08 09:36:16    Page 9 of 11

U.S. Bankruptcy Appellate Panel
of the Ninth Circuit
125 South Grand Avenue, Pasadena, California 91105
Appeals from Central California   (626) 229-7220
Appeals from all other Districts (626) 229-7225

NOTICE OF ENTRY OF JUDGMENT

BAP No. NC-07-1324-JuMkK

RE: STEVE BELL

A separate Judgment was entered in this case on 2/11/2008.

BILL OF COSTS:

Bankruptcy Rule 8014 provides that costs on appeal shall be taxed by the Clerk of the Bankruptcy Court. Cost bills should be filed with the Clerk of the Bankruptcy Court from which the appeal was taken.
9th Cir. BAP Rule 8014-1

ISSUANCE OF THE MANDATE:

The mandate, a certified copy of the judgment sent to the Clerk of the Bankruptcy Court from which the appeal was taken, will be issued 7 days after the expiration of the time for filing a petition for rehearing unless such a petition is filed or the time is shortened or enlarged by order. See Federal Rule of Appellate Procedure 41.

APPEAL TO COURT OF APPEALS:

An appeal to the Ninth Circuit Court of Appeals is initiated by filing a notice of appeal with the Clerk of this Panel. The Notice of Appeal should be accompanied by payment of the $455 filing fee and a copy of the order or decision on appeal. Checks may be made payable to the U.S. Court of Appeals for the Ninth Circuit. See Federal Rules of Appellate Procedure 6 and the corresponding Rules of the United States Court of Appeals for the Ninth Circuit for specific time requirements.

CERTIFICATE OF MAILING
------------------------------------

The undersigned, deputy clerk of the U.S. Bankruptcy Appellate Panel of the Ninth Circuit, hereby certifies that a copy of the document on which this certificate appears was transmitted this date to all parties of record to this appeal.

By: Freddie Brown

Deputy Clerk: February 11, 2008

*[signature]*